Bland, Chancellor.
This case having been submitted, in relation to the claims reported by the auditor as No. 3, 4, and 5, on the remarks in writing of the solicitor of those claimants, the matter has been maturely considered.
It has been insisted, that the auditor had no right to make such objections, as those set forth in his report, to any claim. I do not recollect ever to have met with an instance in which an auditor’s report has been opposed upon similar grounds before. I deem it therefore proper to say something upon this subject, not because I entertain any doubt, or perceive any difficulty, but from a wish that the practice and course of the court should be better understood.
From the nature of the cases brought before this court it is perfectly obvious, that calculations, dividends, and statements of accounts must often be required to be made for the elucidation of the matter, or as preparatory to a decree, or order. Formerly such accounts, or statements were most usually made under a special commission for that purpose, directed to certain commissioners who were *465 required to take testimony, to make the necessary statements therefrom, and to report accordingly to the court. Such commissions were frequently executed at a distance from the court, without any help or light from the pleadings, in which the claims and pretensions of the parties were set forth; and, without any immediate access to the Chancellor for explanation of principles, in case of any doubt, or difficulty with the commissioners. Such a mode of preparing and stating accounts must often have been attended with much expense and inconvenience ; yet as it is a mode of proceeding properly belonging to this court, which has not been in any way expressly or virtually abolished, it may now be resorted to in cases where the books, documents and proofs are at a distance, and cannot, without much inconvenience, be brought into court, and lodged within reach of the regular auditor.(a)
*466 But the Chancellor has been authorized to appoint an auditor during his pleasure.(b) This auditor is the calculator and accountant *467 of the court. He is stationed near to the Chancellor, and, when any calculations or statements are wanted, all the pleadings, exhibits and proofs are put into his hands, so as to enable him fully to investigate, and put the whole matter in proper order as required. As an incident to every reference of a case to the auditor, he is thereby virtually, if not expressly, as under a commission to audit accounts, authorized to take any testimony deemed requisite in relation to any account which may be necessary or which the parties may desire to be stated by him.(c) But, if it be necessary to collect proof from a distance, the parties may either have a regular commission, or be allowed, by a common order, to have it taken any where within the State, before any justice of the peace, on giving notice to the opposite party. All the materials, from which the auditor makes his calculations and statements preparatory to a final adjudication upon the matters in controversy, are thus, by various, cheap, and contemporaneous movements, brought together at one place, and before an officer conversant with the rules and principles by which the case is to be decided, by a court constantly stationary and always accessible. With such facilities, where the parties are themselves diligent, there can be no unreasonable delay, nor any difficulty, but what arises out of the peculiar ambiguity of the proofs, or the real complexity of the case.
The costs of the court are no more, in any case, than a just compensation for the labour required. The auditor’s fees are considered as a part of the costs; and,,as such, are always included in every general award of costs against a plaintiff or defendant; and the payment of them may be enforced, against the party properly chargeable, in the first instance, in the same summary manner as any other costs.(d) But in some cases it becomes a matter of doubt who is properly chargeable, in the first instance, with the auditor’s fees. The law declares, that they are to be “paid by the party desiring such account to be stated.” Upon which it has been held, that in all cases where an account is necessary in any manner to ascertain the claim of a party, he alone is chargeable, although he may not have specially desired the account; and in all other cases, where a party particularly instructs the auditor to state an account in a certain way, he alone is chargeable, upon the ground of its having been specially desired *468 by him.(d) The auditor is allowed by law $4 67 per day for every day he shall reasonably be employed in stating any account; which, by long established usage, has been construed to mean an allowance of that fee for every account, however short it may be. In this case the auditor has already stated two accounts, for each of which he has been allowed that fee; but in the most-difficult cases, and where a statement and distribution are required to be made, among a great multitude of claimants, his fees have rarely altogether exceeded one hundred dollars in any one case.
Under a creditors’ bill it is a rule, that all costs, including the expenses of the sale; .the survey, if any be ordered, or required, either to lay off the land into lots, as in this instance, or to ascertain the quantity sold, where the estate has been sold by the acre; and all taxes, are to be first paid from the proceeds of sale; and the balance only rateably distributed among the creditors, who are, in that way, made to contribute in due proportion to defray the expense of the suit.(e) Yet, according to the course of the court, any other creditors may be allowed to come in, at any time, before a final account has been stated and ratified, and before the court has actually parted with the fund; but if, in order to give them a dividend, after the auditor has made his report, it is necessary to re-state the account; as it is made for their benefit exclusively, the costs of the re-statement are deducted from the dividends allotted to them as the terms upon which alone they can be allowed to come in and participate.(f) But this rule applies only where the proceeds of sale are insufficient to pay all, as in this instance; for if there be a surplus, there can be no reason why it should not be applied, as against the heirs or devisees, in full satisfaction of the principal, interest and costs of a just debt, to which they can make no well grounded objection.(g)
*469 The objections urged against this report indicate an opinion of the solicitor, that the auditor had some bow stepped beyond his proper sphere in making it as he has done. No officer should allow himself to deviate from the line of duty marked out for him by law. The auditor is properly a mere ministerial officer of the court. It is true, that he may legally administer an oath to a witness and take his testimony in relation to an account desired to be stated ;(h) yet he has no judicial power; nor can the legislature constitutionally confer any portion of the Chancellor’s judicial power upon him. He is not in any sense an arbitrator; nor is his report, under any circumstances, considered as obligatory on the parties, unless confirmed by the court. When a case is referred to arbitrators, the court divests itself of all judgment, and the arbitrators are constituted judges of the fact without appeal; on a reference to'the auditor it is otherwise, — he is only to prepare the case as a minister for the Chancellor who is really the judge.(i) Nor can the auditor be allowed to act, in any manner, as a prying, pragmatical agent, hunting up and collecting the means of making or sustaining any claim, or objection in relation to the matter in controversy. It is his duty to confine himself strictly to that which appears upon the face of the proceedings and proofs, and to abstain from suggesting any objection, prejudicial to any party, which the court, in its regular course, would not, of itself, notice and sustain, if founded in fact. It is his duty to examine and digest accounts; to prepare the *470 materials on -which a decree or final disposition of the case may be made ; and to report the result of his examinations, subject to all exceptions of the parties, and to the further order of the Chancellor. On a consideration of this case it does not appear, that the auditor has in any respect departed from the proper line of his duty.(j)
According to the long established practice in creditors’ suits it has been most usual, and' particularly so of late years, to order the case to the auditor, or rather for the trustee or a party-interested to take it to him, after the time allowed to other creditors to exhibit their claims has elapsed, and have an account stated and reported. It is true, that the court may be called upon, in the first instance, to decide' upon all or any one of the claims, which have been exhibited. This course is now, however, rarely or never taken, unless when there is supposed to exist some very unusual difficulty. When the case goes to the auditor, without any previous instructions from the court, he admits into his account every claim that has been filed and properly authenticated, with all others which there is any plausible reason to believe may be, in any wayj sustained by proof and allowed, (k)
In making distribution of the proceeds of a deceased debtor’s real estate among his creditors, this court is directed by an act of assembly,(l) (which in this respect is not at all affected by the testamentary system,)(m) to pay away the proceeds of the realty in the same order, that is to be observed by an executor or administrator in making payments out of the personalty.
It has always been the practice in this court to require all claims to be proved before they are allowed either for the whole or admitted to a dividend, in the same manner as they would be required to be authenticated in order to be passed by an Orphans Court; and therefore no claim, coming in under a- creditors’ bill, will be passed or allowed, which could not, according to law, be passed and allowed against the personal estate by an Orphans Court. This was the practice long before the passage of the general testamentary act ;(n) and has continued to be so ever since.
It has also been always a settled rule of this court, and is one which has been affirmed by the Court of Appeals, that a judgment against an executor or administrator is of no avail against the *471 heirs of the deceased debtor; not even so far as to prevent the operation of the statute of limitations.(o) Therefore these judgments which have been obtained against the executor, cannot relieve these creditors from the necessity of producing the usual proofs of their claims. Their original causes of action, as they stood before these judgments were rendered, must be proved as against these heirs precisely as if no such judgments had ever been obtained.
And generally in other respects all claims must appear upon the face of them, prima facie, to be just and fair; and to have obtained or had assured to them, at the instance of the creditor, payment from no other person or fund. Unless a claim is thus authenticated, and upon the face of it clear, it will not be allowed, even although no objection should be made to it by any one interested. And consequently it has always been considered to be the duty of the auditor to notice, in his report, all objections of this description. The auditor has no right certainly to moot cases to the court; or to make any objections, such as the statute of limitations, or the like, which can only come with propriety from a party interested, and which, therefore, if made by the auditor alone, will be disregarded.
But, notwithstanding a claim may have been formally vouched and reported as clear of all apparent objections, yet 'any party interested, a defendant or a co-creditor, may deny its existence and oppose its allowance altogether, in which case it must be regularly and legally established, as upon an issue joined in a court of law.
It has been found in practice, that there are several important advantages in sending the case at once to the auditor, and having an account stated. The claimants are immediately apprised of what is wanted, if any thing, to sustain their claims: those against which there is no objection may obtain satisfaction, or at least a dividend without further delay. The heirs and each creditor are informed of the nature of the distribution proposed to be made. Each claim is presented in a clear and distinct point of view. The debatable ground is designated, its extent reduced, and the progress of the cause accelerated.
The objection, that these claims No. 3, 4, and 5, are each .of them founded on such a judgment against the executor as carries in itself conclusive evidence of a sufficiency of personal assets to *472 satisfy them, goes to their merits, and unless clearly obviated, they must be rejected. These claimants do not allege, that it will be in their power to remove this objection, by any means whatever, but rest their case entirely upon the fact of its having no foundation in equity. It is certain, that an absolute judgment, obtained without mistake or fraud, is conclusive evidence of a sufficiency of assets in the hands of the executor to satisfy such judgment.(p) The admission of the defendants in this case of the insufficiency of the personal estate was made with reference to none other than the claim of the originally suing creditor by whom it was called for. Now it may be perfectly true, that the executor has actually reserved assets to pay claims No. 3, 4, and 5; and, yet no less true, that he has nothing left to meet the claim of this plaintiff.
There is then nothing in this objection of the auditor incompatible with the previous proceedings or acts of the court; or which, as has been urged, militates against the decree which was grounded upon an alleged and admitted insufficiency of personal estate to satisfy the claim of the plaintiff; for these claims No. 3, 4, and 5, were not then before the court.
But it is said to be an established principle of this court, that where it appears, upon the face of the voucher, that-the creditor may or can obtain payment, by pursuing another and more proper person or fund, he shall not be permitted to come here, and partake of the realty to the prejudice of the heir or of other creditors. It is upon this ground, that an obligee is turned aside to seek payment of the whole or a proportion from a principal, or a co-surety who is solvent. These creditors have established their claims as against the personalty, or natural fund, of the sufficiency of which to satisfy them, their judgments afford conclusive evidence. If they now leave it and obtain satisfaction from the realty, what is to become of the amount of personalty which their judgments prove to exist in the hands of the executors ? Is the executor to be suffered to retain it, or is the heir to be allowed, upon the principle of substitution, to obtain it ? But the demand of a creditor upon the heir is always and must necessarily be founded upon the fact, that the personalty is not sufficient to satisfy the claim. These considerations have convinced me, that the auditor’s objection is correct, and that these *473 claims No. 3, 4, and 5, ought not to be allowed to partake of the proceeds of the realty.
Whereupon it is ordered, that the said claims, designated by the auditor as No. 3, 4, and 5, be and the same are hereby rejected. And the auditor is directed to re-state the account accordingly.
George Barber, whose claim had been stated as No. 3, and Charles Waters, whose claim had been stated as No. 4 and 5, filed their several petitions, on the 7th of July 1828, without oath, in which they alike state, that it was in their power to show, by evidence not now in the proceedings, that the personal estate of the deceased had been exhausted in the payment of qther just debts ; that the executor was insolvent; and that his sureties might be relieved in equity. Whereupon they prayed, that they might be allowed to adduce further proof, and that the order of the 22d of March might be rescinded, &c.
8th July, 1828. — Bland, Chancellor. — These petitions do not allege, that there is any error apparent upon the face of the decision of the court; nor do they set forth and aver, that the petitioners have discovered any new testimony, not known to them at the time the opinion of the court was delivered ; consequently, independently of the want of any affidavit to their petitions, they have laid no foundation for a bill of review, even if they had asked leave to file such a bill; or this were a case in which such a form of proceeding, or something equivalent to it, would be proper. Nor is it stated in these petitions, that there has been “any mistake, oversight, or misapprehension in the judgment pronounced; therefore there is po ground for a re-hearing.
But these claimants, after having had a formal hearing of their case, upon all such facts and circumstances as they then deemed pertinent or necessary;' and, after having submitted it for a decision; and, after their claims had,been rejected, upon the ground, of that very objection of which they had full and timely notice, now ask to have the order so passed, rescinded for the purpose of allowing them to introduce other proofs, not now in the proceedings, to remove those objections, and in fact to give to their case an entirely different complexion.
If such a course could be tolerated, under any circumstances, there would be no stability in any decision whatever; for, there is no case in which the parties might not have some pretext for introducing additional proof, of one kind or other, to vary the case in *474 some way, after the reasons and grounds of the judgment of the court had been fully explained and made known. Instead of the parties being obliged to bring all the facts and circumstances of their case at once before the court, they would be continually tempted to withhold some particulars, expressly with a view to have it reconsidered and amended in those points where they saw, from the opinion of the court, that the law pressed most against them. Such a course of proceeding would open a door to the greatest frauds, and could not but be attended with the most grievous expense and delay. Therefore as these claims have been adjudicated upon, in the manner and upon the grounds on which they had been advisedly and deliberately presented for decision, I deem it improper now to suffer them to be again brought before the court in a new shape, on different principles, and other proofs.
Whereupon it is ordered, that these petitions be and the same are hereby dismissed with costs.
From this order as well as that of the 22d of March there was an appeal, and on the 6th December 1831 the appeals were dismissed with costs.

 Clapham v. Thompson, ante, 123; Rutland v. Yates and Petty, MS., 25th August 1789.
Birchfield v. Vanderheyden, 12th July 1722. — After a commission to account, which had been issued to commissioners at a distance from the court, had been returned without anything having been done, the plaintiff moved “for another commission to some persons in Annapolis to audite the same accounts for his more easy laying the accounts of the deceased before them;” which was granted. — Ch. Rec. Lib. P. L. fol. 891.
Dorsey v. Dulany. — This bill was filed, 11th December 1762, by the plaintiff against the administrator of his deceased partner, for an account, &c. The complainant and defendant, by their counsel, consented and prayed that a commission might issue to some persons to examine evidences and audite accounts in relation to the said case: whereupon commissioners were struck by the counsel of the parties in the usual manner, and a commission issued accordingly, directed to the several persons therein named and appointed, in the words following :
Maryland, Sct. — Frederick, absolute lord and proprietary of the province of Maryland, and Avalon, Lord Baron of Baltimore, &c.: To Dx. John Stevenson, Biyan Philpotof Baltimore county, Lancelot Jaques and George Clark of Ann Arundel county, gentlemen ; greeting: Know ye, that we have nominated and appointed you, or any three or two of you to be our commissioners to examine evidence ; as also to audite, state, settle and adjust all accounts in a certain cause depending in our High Court of Chancery, between Caleb Dorsey of Ann Arundel county, iron master, complainant, and Henrietta Maria Dujany, administratrix de bonis non of Edward Dorsey esq’r. of the same county, defendant: We therefore require you or any three or two of you, that at such time and place, as to you or any three or two of you shall seem convenient, you cause to come before you or any three or two of you all such evidences as shall be to you, or any three or two of you named or produced by either the complainant or defendant ; and also to state, audite, settle, and adjust all accounts relating to the matter in dispute that shall be produced to you, or any three or two of you, by either of the parties, and that you examine them, and every of them, on their corporal oaths to be by you administered on the Holy Evangelists, in the. presence of the said complainant and defendant, if they, having timely notice thereof, think fit to be present, touching their knowledge of any thing that may relate to the cause aforesaid; and that you reduce into writing such account as shall be stated and settled by you; and the same with the said depositions you send together with this our commission under your or any three or two of your hands and seals with all convenient speed to us in our Higti *466 Court of Chancery. Witness ourself at the city of Annapolis, this 25th day of May, Anno Domini, 1763. Reverdy Ghiselin, Reg. Cur. Can.
On the back of .the aforegoing commission was thus endorsed, io wit. — Baltimore county, October the 3d, 1763. Came the within named John Stevenson, Bryan Phil-pot, Lancelot Jacques, and Corbin Lee, before me the subscriber, one of his lordship’s justices of the peace for Baltimore county, and severally made oath on the Holy Evangels, that they would well and truly audite, and state all such accounts as should be by the within parties respectively laid before them pursuant to the within commission, according to the best of their knowledge and understanding.
“ To his Excellency Horatio Sharpe, esq’r, Chancellor of Maryland, &c.
“ We the commissioners, within named, do hereby certify, that by virtue of the within commission to us directed we did, after being legally sworn thereto, and after the appointment, and due qualification of Mr. Daniel Chamier as our clerk and assistant therein, meet at the house of Mr. Daniel Barnet in Baltimore town, on the third day of October seventeen hundred and sixty.-three, in the presence of Caleb Dorsey the within mentioned complainant, and Benjamin Beat of Annapolis, on the part and'behalf of the within mentioned defendant, in order to adjust, audit, and settle all accounts relating to the matters in dispute between the said parties, and did there and then proceed to settle, adjust, and audite, and did there and then settle, audite and adjust in the presence of the said complainant, and the said Benjamin Beal, after hearing all the allegations of the said complainant, and the said Benjamin Beal, all accounts relating to the matters in dispute as aforesaid; which settlement appeal's by the annexed accompt and vouchers, and which we humbly submit to the approbation of your excellency.”
After which the account referred to is entered at large, and then follows this decree.
14th February, 1764. — Shakpe, Chancellor. — It appearing to this court by the report made by John Stevenson, Bryan Philpot, and Lancelot Jacques, three of the four commissioners who, or three or two of whom were appointed to state, audite, settle, and adjust all accounts relating to the matters in dispute, that there is. due to the said complainant Caleb Dorsey, six hundred and ninety-nine pounds ten shillings and four pence half-penny sterling, from the said defendant Henrietta Maria Dulany, as administratrix aforesaid, after deducting and discounting the bond and two promissory notes in the said defendant’s answer mentioned, to wit, the bond of the said complainant to the aforesaid Edward Dorsey, dated the twenty-first day of February seventeen hundred and fifty-seven, conditioned for the payment of one hundred and fifty-six pounds nine shillings and eleven pence half penny, current money, at or upon the first day of April then next with legal interest, and the complainant’s promissory notes to the said Edward Dorsey, one dated the fifteenth day of September seventeen hundred and fifty-seven, for sixty-two pounds two shillings and four pence sterling with legal interest, and the other dated the tenth day of October seventeen hundred and fifty-nine, for two hundred and fifty pounds and eleven shillings sterling with legal interest.
Whereupon this court doth think fit, and accordingly doth order and decree, that the said defendant Henrietta Maria Dulany, out of the goods, chattels, rights and credits which were of the aforesaid Edward Dorsey deceased at the time of his death, in her hands remaining to he administered, pay to the aforesaid Caleb Dorsey the said balance of six hundred and ninety-nine pounds, ten shillings and four pence half-penny sterling, and also that she deliver up to the said Caleb Dorsey, the said mentioned bond and two promissory notes to ho by him cancelled, destroyed or otherwise disposed of as he shall think fit. — Chan. Proc. Lib. D.D.No.J 315.

 1785, ch. 72, s. 17.

 Prac. Reg. 309.

 Denny v. Wallace & Davidson, MS. 1806; Farrow v. White, 1 Jac. & Walk. 623.

 Denny v. Norwood, MS. 1806; Denny v. Wallace & Davidson, MS. 1806.

 Hare v. Rose, 2 Ves. 558; Shortley v. Selby, 5 Mad. 447; Bluett v. Jessop, Jac. Rep. 243.

 2 Fow. Ex. Pra. 279, 254; Angell v. Haddon, 1 Mad. Rep. 528.

 Bromley v. Goodere, 1 Atk. 75; Butcher v. Churchill, 14 Ves. 573; Ex parte Mills, 2 Ves. jun. 295; Ex parte Hankey, 3 Bro. C C. 504; Ex parte Deey, 2 Ball & B. 77; Tyson v. Hollingsworth, MS. 12th July 1808.
Low v. Conner. — This was a creditors’ petition, filed 22d February 1790, praying, that the lands of James Conner might be sold to pay his debts, for which his personal estate was insufficient. 1st September, 1791, decree for a sale in the usual form. Sale made and reported. 4th March 1792, ordered, that the return of Joshua Townshend, trustee for the sale of the real estate of James Connor, this day made be approved; and that liis proceedings and the sale by him made be approved, ratified and confirmed, unless cause to the conlraiy be shewn on or before the fourth day of *469 May next. 10th December 1792 ; no cause having been shewn the sale was absolutely ratified.
11th December, 1792. — Hanson, Chancellor. — Each of the creditors of James Conner deceased, mentioned in the report of the auditor, is entitled, not only to the sum set down opposite to his name out of the principal money due, or paid by the purchasers of Conner’s real estate, but likewise to his just proportion, or dividend of the interest paid, or to be paid on the sum of £112 19s. lid, which appears, from the said report, to be the net product of 'the sale.
The decree directs the money arising from the sale to be brought into court. But if the trustee shall pay to each of the creditors aforesaid, that which he is entitled to, and take his receipt in full, he will probably run no risk of being sued on his bond.
For illustration. N. Latcham appears, from the report aforesaid, entitled to the sum of £6 5s. Id. out of the sum of £112 19s. lid. He is likewise entitled to his dividend of the interest, which the trustee shall receive on the said £112 19s. lid. Suppose two years interest to be paid on the said £112 19s. lid. This will be about £13 11s. Od. Then as ¿6112 19s. lid. is to £13 11s. 0d. so is the sum of £6 5s. Id. to the additional sum which the said Batcham will be entitled to. So of the rest.

 Moore v. Aylet, 2 Dick. 641.

 Field v. Holland, 6 Cran. 21; Dick v. Milligan, 2 Ves. jun. 24.

 Le Sage v. Coussmaker, 1 Esp. Rep. 187; Field v. Holland, 6 Cran. 21.

 Field v. Holland, 6 Cran. 26.

 1785, ch. 80, s. 7.

 1798, ch. 101.

 1798, ch. 101.

 Harwood v. Rawlings, 4 H. & J. 126; Duvall v. Green, 4 H. & J. 270; Mason v. Peter, 1 Mun. 437.

 Wheatly v. Lane, 1 Saund. 219 n. 8; Skelton v. Hawling, 1 Wils. 258; Suffolk v. Harding, 3 Rep. Chan. 88; Ramsden v. Jackson, 1 Atk. 292; Greerside v. Benson, 3 Aft. 248; Robinson v. Bell, 2 Vern. 146; Ruggles v. Sherman, 14 John. 446; Giles v. Perryman, 1 H. & G. 168; Gaither v. Welch, 3 G. & J. 259.